UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APLUS HOLDINGS INC.,

                            Plaintiff-
                            Counterclaim Defendant,

            - against -

IVAN  VACHOVSKY and
LILIAN VACHOVSKY,

                            Defendants-
                            Counterclaim Plaintiffs.

08cv2760(MGC)(DFE)

**ANSWER AND
COUNTERCLAIM**

**ELECTRONICALLY FILED**

       Defendants Ivan Vachovsky and Lilian Vachovsky ("Defendants"), by and through their undersigned counsel, Markowitz & Chattoraj LLP, submit the following Answer and Counterclaim to the March 14, 2008 Complaint of Plaintiff Aplus Holdings Inc. ("APLUS" or "Plaintiff").

<u>**NATURE OF THE CASE**</u>

       1.      In response to the allegations contained in Paragraph 1 of the Complaint, Defendants admit that Plaintiff purports to bring this action on the basis of Defendants' alleged breach of certain warranties and representations in their agreement with Plaintiff, the Stock Purchase Agreement ("SPA"), for the stock purchase and sale of their company to Plaintiff for cash consideration plus APLUS stock but Defendants deny the remainder of the allegations in Paragraph 1 of the Complaint because Plaintiff brings this action not as a result of any breach by Defendants but rather as a means to try to delay or avoid payment to Defendants of $2 million that Plaintiff owes to Defendants under the SPA.

       2.      Defendants deny the allegations contained in Paragraph 2 of the Complaint except, with respect to those allegations contained in Paragraph 2 of the Complaint that concern the contents, meaning and/or implications of the SPA, state that

1

these constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

3.      Defendants deny the allegations contained in Paragraph 3 of the Complaint and aver that, even if the factual allegations in the Complaint are taken as true and at face value, Plaintiff has not even remotely come close to incurring losses in excess of $5,100,000.00.

4.      Defendants deny the allegations contained in Paragraph 4 of the Complaint.

**THE PARTIES**

5.      Defendants admit the allegations contained in Paragraph 5 of the Complaint.

6.      Defendants deny upon information and belief the allegations contained in Paragraph 6 of the Complaint except admit that APLUS is a Delaware corporation.

7.      Defendants admit the allegations contained in Paragraph 7 of the Complaint except, with respect to those allegations contained in Paragraph 7 of the Complaint that concern the contents, meaning and/or implications of the SPA, state that these constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

8.      Defendants admit the allegations contained in Paragraph 8 of the Complaint.

## JURISDICTION AND VENUE

9.      The allegations contained in Paragraph 9 of the Complaint constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants admit the allegations contained in Paragraph 9 of the Complaint, and aver that regardless of the amount in controversy, Plaintiff is not entitled to relief of any kind.

10.      The allegations contained in Paragraph 10 of the Complaint constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants admit the allegations contained in Paragraph 10 of the Complaint, and respectfully refer the Court to Section 9.14 of the SPA for the contents thereof.

## BACKGROUND

11.      In response to the allegations contained in Paragraph 11 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof and further state that, while Plaintiff purports to attach a copy of the SPA as Exhibit A to the Complaint, the attached copy of the SPA does not contain any of the SPA's various schedules, attachments and statements.

12.      In response to the allegations contained in Paragraph 12 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

13.    Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 13 of the Complaint except, with respect to those allegations contained in Paragraph 13 of the Complaint that concern the contents, meaning and/or implications of the SPA, state that these constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

14.    Defendants deny the allegations contained in Paragraph 14 of the Complaint.

15.    Defendants deny the allegations contained in Paragraph 15 of the Complaint.

16.    In response to the allegations contained in Paragraph 16 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

17.    Defendants deny the allegations contained in Paragraph 17 of the Complaint and further state that the last sentence of Section 9.3 of the SPA reads in part that "the Buyer determined the consideration it was willing to pay for the Group Companies based on a multiple of EBITDA (earnings before interest, taxes, depreciation and amortization) and the Buyer Indemnified Persons shall be entitled to claim Losses under ARTICLE VI based on such multiple if the Applicable Loss results in more than a one-time reduction to EBITDA," which Defendants expressly deny occurred here.

18.     In response to the allegations contained in Paragraph 18 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

19.     In response to the allegations contained in Paragraph 19 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

20.     Defendants deny the allegations contained in Paragraph 20 of the Complaint.

21.     Defendants deny the allegations contained in Paragraph 21 of the Complaint.

22.     In response to the allegations contained in Paragraph 22 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.  Defendants further state that, in light of the quotation in Paragraph 22 of the Complaint of a section of the SPA referencing "Financial Statements," it is notable that Plaintiff attaches a copy of the SPA as Exhibit A to the Complaint that does not contain any of the SPA's various schedules, attachments and statements.

23.     In response to the allegations contained in Paragraph 23 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.  Defendants further state that, in light of the quotation in Paragraph 23 of the Complaint of a section of the SPA referencing "the Most Recent Balance Sheet," it is notable that Plaintiff attaches a copy of the SPA as Exhibit A to the Complaint that does not contain any of the SPA's various schedules, attachments and statements.

24.     Defendants deny the allegations contained in Paragraph 24 of the Complaint.

25.     In response to the allegations contained in Paragraph 25 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

26.     Defendants deny the allegations contained in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations contained in Paragraph 27 of the Complaint.

28.     Defendants deny knowledge the allegations contained in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations contained in Paragraph 29 of the Complaint except deny knowledge or information sufficient to form a belief as to the

truth or falsity of when Plaintiff "discovered" the alleged use of "unlicensed copies of images owned by Getty Images."

30.    In response to the allegations contained in Paragraph 30 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

31.    In response to the allegations contained in Paragraph 31 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

32.    In response to the allegations of Paragraph 32 of the Complaint, Defendants state that, to the extent these allegations concern the contents, meaning, and/or implications of the SPA, they constitute a legal conclusion to which no response is required and Defendants respectfully refer the Court to the SPA for the contents thereof but state that, to the extent these allegations concerns the incurrence of "legal fees and settlement costs" as well as "future costs" in relation to two unspecified lawsuits, Defendants deny knowledge or information sufficient to form a belief as to the truth or falsity of the contents of those allegations.

33.    Defendants deny the allegations contained in Paragraph 33 of the Complaint except deny knowledge or information sufficient to form a belief as to whether there have been "a number of cases filed against Abacus America in small

claims courts in various jurisdictions and in the Better Business Bureau relating to pre-closing events [that] were not disclosed in the SPA" and when Plaintiff may have "discovered" the existence of such cases.

34.     In response to the allegations contained in Paragraph 34 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

35.     Defendants deny the allegations contained in Paragraph 35 of the Complaint.

36.     In response to the allegations contained in Paragraph 36 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

37.     Defendants deny the allegations contained in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations contained in Paragraph 38 of the Complaint.

39.     Defendants deny the allegations contained in Paragraph 39 of the Complaint.

40.     In response to the allegations contained in Paragraph 40 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications

of the SPA and constitute a legal conclusion to which no response is required, but to the

extent a response is required, Defendants respectfully refer the Court to the SPA for the

contents thereof.

41.    Defendants deny the allegations contained in Paragraph 41 of the

Complaint.

42.    In response to the allegations contained in the first sentence of Paragraph

42 of the Complaint, Defendants state that these allegations concern the contents,

meaning, and/or implications of the SPA and constitute a legal conclusion to which no

response is required, but to the extent a response is required, Defendants respectfully

refer the Court to the SPA for the contents thereof.

43.    Defendants deny the allegations contained in Paragraph 43 of the

Complaint.

44.    In response to the allegations contained in Paragraph 44 of the Complaint,

Defendants state that these allegations concern the contents, meaning, and/or implications

of the SPA and constitute a legal conclusion to which no response is required, but to the

extent a response is required, Defendants respectfully refer the Court to the SPA for the

contents thereof, further state that Defendants provided a Working Capital Statement

pursuant to the SPA that was truthful and correct, and note that Plaintiff attaches a copy

of the SPA as Exhibit A to the Complaint that does not contain any of the SPA's various

schedules, attachments and statements.

45.    Defendants deny the allegations contained in Paragraph 45 of the

Complaint.

46.     Defendants deny the allegations contained in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations contained in Paragraph 47 of the Complaint, except Defendants admit that APLUS sent letters to Defendants on or about the referenced dates purporting to demand monies from Defendants in alleged reliance on certain provisions of the SPA and Defendants have not acceded to Plaintiff's demands because, among other things, Defendants have not breached the SPA, Plaintiff has not suffered losses due to any purported breach of the SPA by Defendants, and Plaintiff is not entitled or due under any law or contract to indemnification from Defendants.

48.     Defendants deny the allegations contained in Paragraph 48 of the Complaint.

49.     In response to the allegations contained in Paragraph 49 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

50.     In response to the allegations contained in Paragraph 50 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

## CAUSES OF ACTION

51.    In response to Paragraph 51 of the Complaint, Defendants incorporate by reference their responses to the allegations contained in the above paragraphs.

52.    Defendants admit the allegations contained in Paragraph 52 of the Complaint.

53.    In response to the allegations contained in Paragraph 52 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

54.    Defendants deny the allegations contained in Paragraph 54 of the Complaint.

55.    Defendants deny the allegations contained in Paragraph 55 of the Complaint.

56.    Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.    Defendants deny the allegations contained in Paragraph 57 of the Complaint.

58.    In response to Paragraph 58 of the Complaint, Defendants incorporate by reference their responses to the allegations contained in the above paragraphs.

59.    In response to the allegations contained in Paragraph 59 of the Complaint, Defendants state that these allegations concern the contents, meaning, and/or implications of the SPA and constitute a legal conclusion to which no response is required, but to the

extent a response is required, Defendants respectfully refer the Court to the SPA for the contents thereof.

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint, except Defendants admit that APLUS sent letters to Defendants purporting to demand monies from Defendants in alleged reliance on certain provisions of the SPA.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint, except Defendants admit that APLUS sent letters to Defendants purporting to demand monies from Defendants in alleged reliance on certain provisions of the SPA, and Defendants have not acceded to Plaintiff's demands.

62.     Defendants deny the allegations contained in Paragraph 62 of the Complaint.

63.     In response to Paragraph 63 of the Complaint, Defendants incorporate by reference their responses to the allegations contained in the above paragraphs.

64.     Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants deny the allegations contained in Paragraph 65 of the Complaint.

66.     Defendants deny the allegations contained in Paragraph 66 of the Complaint.

67.     Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint.

## AFFIRMATIVE DEFENSES

Without admitting any of the allegations of Plaintiff's Complaint, Defendants hereby assert the following defenses.

### FIRST AFFIRMATIVE DEFENSE

69.     Plaintiff's Complaint fails to state a claim against Defendants upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

70.     Plaintiff's claims are off-set, in whole or in part, by Defendants' claims against Plaintiff, as set forth below.

### THIRD AFFIRMATIVE DEFENSE

71.     Some or all of Plaintiff's claims are barred by the "Basket" amount set forth in Section 6.3(a) of the SPA.

### FOURTH AFFIRMATIVE DEFENSE

72.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's own failure to exercise due diligence prior to entering into the SPA.

### FIFTH AFFIRMATIVE DEFENSE

73.     Some or all of Plaintiff's claims are barred because such claims are *de minimis* and/or are not material.

74.     In the alternative, some or all of Plaintiff's claims are barred because the alleged misrepresentations by Defendants in connection with the SPA were *de minimis* and/or were not material.

## SIXTH AFFIRMATIVE DEFENSE

75.     Plaintiff's claims are barred, in whole or in part, by the doctrines of estoppel, waiver, acquiescence, or ratification.

## SEVENTH AFFIRMATIVE DEFENSE

76.     Plaintiff's alleged losses, in whole or in part, were proximately caused by Plaintiff's own acts and omissions.

## EIGHTH AFFIRMATIVE DEFENSE

77.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure to mitigate its alleged losses.

## NINTH AFFIRMATIVE DEFENSE

78.     Some or all of Plaintiff's alleged claims are barred by the definition of "Loss" in the SPA, which bars recovery for alleged future lost profits and for injuries not actually incurred.

## TENTH AFFIRMATIVE DEFENSE

79.     Some or all of Plaintiff's alleged claims are unripe, and Plaintiff has not suffered an injury in fact.

## ELEVENTH AFFIRMATIVE DEFENSE

80.     Plaintiff's First and Third Claims for Relief are barred by Section 9.3 of the SPA, which provides that indemnification is the sole and exclusive means by which Plaintiff can seek to recover for the alleged losses.

## TWELFTH AFFIRMATIVE DEFENSE

81.     Plaintiff's Third Claim for Relief is barred because an express contract governs the relations between the parties.

## THIRTEENTH AFFIRMATIVE DEFENSE

82.     Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

## FOURTEENTH AFFIRMATIVE DEFENSE

83.     Plaintiff's claims are barred, in whole or in part, because, to the extent any information was not disclosed in the Schedules to the SPA, Plaintiff was actually or constructively on notice of such information pursuant to the "bespeaks caution" doctrine or other similar doctrines of constructive notice.

## FIFTEENTH AFFIRMATIVE DEFENSE

84.     Plaintiff's claims are barred, in whole or in part, because the tax treatment, license fees, and other information known to Defendants and provided to Plaintiff in connection with the SPA was formulated, approved and/or provided to Defendants by professional auditors and accountants upon whom Defendants were entitled to rely.

## SIXTEENTH AFFIRMATIVE DEFENSE

85.     Plaintiff's claims are barred, in whole or in part, because Plaintiff itself acted to frustrate the purpose of the underlying agreement, preventing Defendants from effectuating the agreement and reaping the benefit of their bargain.

## SEVENTEENTH AFFIRMATIVE DEFENSE

86.     Plaintiff's claims are barred, in whole or in part, by relevant contractual limitations periods.

## EIGHTEENTH AFFIRMATIVE DEFENSE

87.     Plaintiff's claims are barred, in whole or in part, by Plaintiff's own failure to perform under the relevant agreements.

## NINETEENTH AFFIRMATIVE DEFENSE

88.    Final audited financial statements demonstrate that the company's earnings were higher than reflected in the financial statements incorporated into the SPA.

89.    As a result, Plaintiffs were able to purchase the company at a substantially lower price, and Defendants received reduced proceeds from the sale.

90.    Plaintiff's claims are barred, in whole or in part, or set off, in the amount of Plaintiff's underpayment for the company under the SPA.

## TWENTIETH AFFIRMATIVE DEFENSE

91.    To the extent Plaintiff's claims rely on allegations of oral representations or misrepresentations, such claims are barred, in whole or in part, by the applicable statute of frauds.

## COUNTERCLAIM

Defendants-Counterclaim Plaintiffs Ivan Vachovsky ("Ivan") and Lilian Vachovsky ("Lilian") (collectively with Ivan, the "Vachovskys"), by and through their undersigned counsel, Markowitz & Chattoraj LLP, as and for their Counterclaim against Plaintiff-Counterclaim Defendant APLUS Holdings Inc. ("APLUS"), allege as follows:

1.    On or about July 25, 2006, the Vachovskys sold their Internet web hosting and management company, Abacus America, Inc., d/b/a Aplus.Net ("Abacus America"), along with two other companies they owned to a holding entity, APLUS, whose parent corporations are Catalyst Investors QP II, L.P. and Catalyst Investors II, L.P. (collectively "Catalyst"). Catalyst is a New York equity fund and APLUS is the holding company created by Catalyst for the purchase and operations of these companies. Since the sale by the Vachovskys, APLUS has been run by Catalyst and its handpicked Chief Executive Officer ("CEO"), Gabriel Murphy.

16

2.      APLUS files this lawsuit demanding more than five million dollars from the Vachovskys on the purported basis that the Vachovskys somehow breached warranties and representations in the sale agreement.  This lawsuit is designed to enable APLUS to claim that the non-compete amounts it owes the Vachovskys under the purchase agreement are more than offset by "losses" purportedly caused by the Vachovskys' so-called "breaches" of their warranties and representations under the purchase agreement.

3.      As the Vachovskys set forth above in their Answer to the Complaint and now explain further below, APLUS's contentions suffer from a fatal flaw:  they are defective because, among other things, APLUS suffered no losses as a result of any of the Vachovskys' purported breaches of warranties and representations.

4.      The Vachovskys file this counterclaim to recover the monies they are properly owed under the Stock Purchase Agreement (the "SPA").

## JURISDICTION

5.      This Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. § 1367(a), because the claims set forth herein are so related to the claims set forth in the Complaint that they form part of the same case or controversy.

## RELEVANT FACTS

### Background

6.      Ivan and Lilian Vachovsky founded their first company in Bulgaria in 1990.  Recognizing the entrepreneurial opportunities created by the fall of Communism and needing to feed their family at a time when jobs were hard to find in Bulgaaria, the Vachovskys founded a company specializing in the repair, resale and assembly of

electronic goods and eventually computers.  This company eventually became Abacus

Trade Ltd. ("Abacus Bulgaria").  Like many entrepreneurs before them, the Vachovskys

chose to start this business based on what they already knew; Ivan Vachovsky has a

master's degree in electronics and a Ph.D in applied mathematics, and Lilian Vachovsky,

Ivan's wife, has a master's degree in computer science.

7.     After investing several years of effort in their new company, the

Vachovskys realized the Bulgarian market presented limited opportunities because, if

nothing else, Bulgaria's total population numbered only approximately seven million.

The Vachovskys decided to move to the United States in order to pursue the American

dream.  Thus, in 1992, Ivan Vachovsky came to the United States and founded Abacus

America, a California corporation.  Lilian Vachovsky followed in 1993.

8.     In 1996, several years after their move to the United States, the

Vachovskys decided to have their company move into the fledgling Internet services and

website hosting market.  It was at this time that Abacus America began doing business as

"Aplus.Net."

9.     Over the following 10 years, by working twelve-hour days, seven days a

week, and by devoting their energy and attention to every last detail of the company's

operations, the Vachovskys were able to build their business into a successful and

flourishing company.  During that time, the Vachovskys took few, if any vacations and

worked around the clock.  In addition to working, the Vachovskys raised their two

teenage sons and, in 1995, added twin baby daughters to their family. Notably, thirty days

after delivering her twin girls, Lilian Vachovsky was back at work running the operations

of the company full-time.

10.     In early 2006, a private equity firm called Catalyst Investors approached the Vachovskys about purchasing Abacus America, Abacus Bulgaria and the Vachovskys' Philippines operations, known as Aplus.Net Philippines Inc. ("Abacus Philippines").  On July 25, 2006, an agreement was reached between the parties whereby Catalyst purchased the Abacus entities from the Vachovskys.

**The Non-Compete Payment**

11.     The Stock Purchase Agreement ("SPA") governs the obligations of the parties to each other with respect to the sale of Vachovskys' businesses to APLUS.  As a result, the SPA is critical to this action; likewise, the extensive disclosures contained in the Schedules attached to the SPA, which APLUS chose not to include with the Complaint, are directly relevant to the claims in this case.

12.     Under Section 7.3 of the SPA, Ivan and Lilian Vachovsky agreed not to disparage, compete with, or solicit the clients or employees of APLUS for a period of years after their sale of the company.  The Vachovskys have complied and are continuing to comply with the terms of these negative covenants; in so doing, the Vachovskys have rendered and are continuing to render performance for this provision of their bargain and agreement.  Notably, nowhere, not in the Complaint nor in any communication with the Vachovskys, does APLUS contend otherwise.

13.     In express consideration for these negative covenants, the SPA provided as follows:

> In consideration of the covenants and agreements set forth in Section 7.3(a), 7.3(b) and 7.3(c) (collectively, the "Restrictive Covenants"), the Buyer shall pay, or shall cause to be paid, the Non-Compete Amount to the Shareholders (to be allocated fifty percent (50%) to each Shareholder). The payment to each Shareholder of such

Shareholder's portion of the Non-Compete Amount shall be made in two equal installments occurring on December 31, 2007 and December 31, 2008, such payments to be made by wire transfer of immediately available funds to an account designated by such Shareholder by written 39 notice to the Buyer not less than two (2) Business Days prior to such payment; *provided,* that such payments shall be deemed to have been made to the extent that the Buyer exercises its rights under Section 6.5(b)(i); and *provided, further,* that if either Shareholder breaches any of the Restrictive Covenants, then both Shareholders shall be deemed to have forfeited all right, title and interest in and to any such payment.  (SPA § 7.3(d).)

14.     The SPA defines the "Non-Compete Amount" to mean "an amount equal to $2,000,000."  SPA Art. VIII, at 49.  This provision, which enables APLUS to offset its obligation to pay the Vachovskys the Non-Compete Amount with its rights to invoke indemnification, purports to provide APLUS with the loophole it needs, and forms the true basis of this lawsuit.

**Plaintiff's Pretextual Claims**

15.     The Vachovskys have performed and are continuing to perform all their duties under the SPA.

16.     Based on its absurd claims for "indemnification," APLUS purports to offset its long standing obligation to pay the Vachovskys the two installments of the Non-Compete Amount, based on a series of patently absurd claims.

17.     Although the Complaint is tellingly devoid of detail, APLUS sent two letters to the Vachovskys, the first on December 17, 2007 and the second on January 24, 2008, which purported to notify the Vachovskys of APLUS "indemnification" claims. These letters provide enough information to show that the claims are utterly without basis.

18.     The Complaint consists of a series of flimsy allegations of

"misrepresentation," but even cursory analysis of the Complaints and the two letters that actually provide details regarding the alleged misrepresentations demonstrate that each and every one of the supposed losses either admittedly has not occurred or resulted from a cause other than any alleged misrepresentation by the Vachovskys.

19.    For example, the Complaint alleges (¶¶ 18-21) that the company failed to pay certain Bulgarian taxes before the closing of the transaction and "may incur future losses" from such alleged nonpayment.  Both the Complaint and the December 17, 2007 letter make clear, however, that APLUS has suffered no losses whatsoever from such allegedly unpaid taxes.  No Bulgarian authority has imposed any additional tax liability on the company.

**Plaintiff's Repudiation of the Agreement**

20.    In the letters, APLUS informed the Vachovskys that it did not intend to pay them the first half of the Non-Compete Amount, which was due to be paid on December 31, 2007.  APLUS claimed that the Non-Compete Amount was offset by the alleged "losses" set forth in the letters (and now, in the Complaint).  Indeed, APLUS claimed, and continues to allege in the Complaint, that the Vachovskys owe Plaintiff over $5 million as "indemnification" for APLUS's bogus "losses."

21.    By notifying the Vachovskys that it did not intend to pay the first half of the Non-Compete Amount, due on December 31, 2007, and by claiming that, instead, the Vachovskys owed APLUS over $5 million in "indemnification," APLUS anticipatorily breached and repudiated its agreement with the Vachovskys.

## CAUSE OF ACTION
(Breach of Contract)

22.     Defendants-Counterclaim Plaintiffs repeat and reallege the allegations set forth above and incorporate them as if fully set forth herein.

23.     APLUS and the Vachovskys are parties to a valid and binding agreement and contract, the SPA.

24.     As set forth above, the Vachovskys have fully performed and are continuing to perform all of their obligations under the SPA.

25.     By repudiating its obligation to pay the Vachovskys the Non-Compete Amount when due, based on spurious indemnification claims, APLUS failed to perform its obligations under the SPA.

26.     As a result of APLUS's breach of the contract, the Vachovskys have been damaged in an amount to be determined at trial, but in no event less than $2 million, plus applicable interest, attorneys' fees, and costs.

WHEREFORE, Defendants-Counterclaim Plaintiffs Ivan Vachovsky and Lilian Vachovsky respectfully request that this Court enter judgment against Plaintiff-Counterclaim Defendant APLUS Holdings, Inc.:

(1)     dismissing the Complaint in its entirety and with prejudice;

(2)     awarding money damages to Defendants-Counterclaim Plaintiffs in the amount of their damages, interest, costs, and expenses, including attorney fees, incurred in defending against the claims asserted by Plaintiff-Counterclaim Defendant;

(3)     awarding money damages to Defendants-Counterclaim Plaintiffs in the amount of their damages, including interest, costs, and expenses, resulting from

APLUS's breach of the agreement between the parties, in an amount to be determined at trial but in no event less than $2 million;

(4)     awarding money damages to Defendants-Counterclaim Plaintiffs in the amount of their damages, interest, costs, and expenses, including attorney fees, incurred in prosecuting their claims against Plaintiff-Counterclaim Defendant; and

(5)     granting such other and further relief as the Court deems just and proper.


Dated: New York, New York             /s/ Alon Markowitz
       May 2, 2008                    Alon Markowitz (AM 0111)
                                      MARKOWITZ & CHATTORAJ LLP
                                      271 Madison Avenue, 20th Floor
                                      New York, New York 10016
                                      (212) 481-1220

                                      Attorneys for Defendants-Counterclaim
                                      Plaintiffs Ivan Vachovsky and Lilian
                                      Vachovsky